IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

B.G.,

Plaintiff,

v.

SAM MALHOTRA, *et al.*,

Defendants.

Civil Action No. RDB-15-2663

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff B.G. ("B.G." or "Plaintiff")[1] brings this 42 U.S.C. § 1983 action against Defendants Sam Malhotra, Secretary of the Maryland Department of Human Resources[2] ("Secretary Malhotra"), Peter Buesgens, Director of the Worcester County Department of Social Services[3] ("Director Buesgens"), Teresa Waller ("Waller"), Shae Nottingham ("Nottingham"), and Kimberly Linton[4] ("Linton") (collectively, "Defendants"), alleging a violation of the Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV. Specifically, she asserts that Defendants deprived her of her right to due process by removing her child without a pre-removal or prompt post-removal hearing.

Presently pending are Plaintiff's Motion for Preliminary Injunction (ECF No. 5); Defendants' Motion to Dismiss the Original Complaint (ECF No. 12); Plaintiff's Motion for Summary Judgment (ECF No. 13); and Defendants' Motion to Dismiss the Amended

[1] As Plaintiff is a minor, only her initials will be used for identification.
[2] Secretary Malhotra is sued in his official capacity.
[3] Director Buesgens is sued in his official capacity.
[4] Waller, a home services worker, Nottingham, a case worker, and Linton, a supervisor, are each sued in their individual and official capacities. Amended Compl. ¶¶ 6-8, ECF No. 18. All are DSS employees. *Id.*

Complaint (ECF No. 31). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Plaintiff's Motion for Preliminary Injunction (ECF No. 5) is DENIED; Defendants' Motion to Dismiss the Original Complaint (ECF No. 12) is MOOT;[5] Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED; and Defendants' Motion to Dismiss the Amended Complaint (ECF No. 31) is GRANTED.

BACKGROUND

At the motion to dismiss stage, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This case arises out of the removal of a child from the home of Plaintiff B.G. by employees of the Worcester County Department of Social Services ("DSS") on August 4, 2015. *See generally* Amended Compl., ECF No. 18. Ultimately, custody of the child was awarded to the father by the Circuit Court for Worcester County, Maryland, after a *pendent lite* hearing on October 29, 2015.

B.G. is currently fifteen years of age and resides in Worcester County with her mother, Brianna Gaudioso ("Mrs. Gaudioso"). *Id.* ¶ 3. When she was fourteen years old, she gave birth to a son, N. *Id.* ¶ 10. Shortly after B.G.'s return from the hospital, her mother contacted the DSS on B.G.'s behalf to inquire as to the services available for new mothers. *Id.* ¶ 11. Mrs. Gaudioso also sought information on whether DSS could facilitate establishing visitation between N. and his father, eighteen-year-old Kirby Short ("Short"). *Id.* ¶¶ 11-12.

[5] On November 9, 2015, Plaintiff filed an Amended Complaint (ECF No. 18). Defendants thus acknowledge that their first Motion to Dismiss was rendered moot by that filing. Notice, ECF No. 20.

As a result, DSS began to conduct interviews of B.G., Short, and their respective family members. *Id.* ¶ 12.

Plaintiff alleges that Defendant Waller, a DSS home services worker, arrived "unannounced" at B.G.'s home on June 24, 2015. *Id.* ¶¶ 7, 13. Waller allegedly informed B.G. and Mrs. Gaudioso that N. would be placed with his father pending the parties' participation in a "Family Involvement Meeting."[6] *Id.* ¶ 13. Waller also allegedly required that B.G. sign a "safety plan"[7] for N. *Id.* When B.G. and her mother voiced their opposition to N.'s removal, Waller allegedly explained that visitation would be denied if they continued to oppose the removal. *Id.* ¶ 14. Plaintiff claims that Waller assured them that a judge had approved the removal. *Id.* B.G. and her mother then allowed Waller to remove N. and place him with his father, Kirby Short. *Id.* ¶ 15. Allegedly on the advice of DSS, Short filed for custody in the Circuit Court for Worcester County on June 29, 2015. *Id.* ¶ 16.

A Family Involvement Meeting organized by the Worcester County Department of Social Services was held on July 2, 2015, at which B.G. learned that N. was to remain in the care of his father while the custody proceeding was pending. *Id.* ¶¶ 17-18. Under this arrangement, B.G. received three hours per week of supervised visitation. *Id.* ¶ 18. Again, B.G. and Mrs. Gaudioso opposed DSS's determination, but they claim that they were ignored. *Id.* ¶ 19. DSS allegedly instructed B.G. to sign another "safety plan" confirming this arrangement, and she complied. *Id.* ¶ 20.

---

[6] A "Family Involvement Meeting" is "a casework practice forum to convene family members during key child welfare decision points." Maryland Social Services Administration, Policy Directive SSA # 10-08, 2 (Aug. 14, 2009), https://www.dhr.state.md.us/blog/wp-content/uploads/2012/10/ssa-10-08-family-involvement-meetings-fims.pdf .

[7] A "safety plan" is the recommendation plan developed during the family involvement meeting that identifies the "safest and least restrictive options for th[e] child." Policy Directive SSA # 10-08 at 2.

Plaintiff was served with Short's custody complaint on August 3, 2015. *Id.* ¶ 21. She subsequently sought the advice of legal counsel in order to ascertain her rights as the mother of N. *Id.* ¶ 22. When Defendant Nottingham, a DSS case worker, arrived at the Gaudioso home on August 4, 2015 for a supervised visit with N., B.G. allegedly stated that she was rescinding her consent to the "safety plan" and keeping N. *Id.* She alleges that Nottingham made several telephone calls in response, ultimately explaining to Plaintiff that she was required to leave with N. in her custody. *Id.* ¶ 23. B.G. again refused to release N. to Nottingham and asked Nottingham to leave. *Id.* ¶ 24. Although Nottingham complied with the demand, she returned shortly thereafter with her supervisor, Defendant Linton, and local law enforcement. *Id.* ¶ 25. Nottingham and Linton removed N. from B.G.'s care, furnishing a form entitled, "Authorization for Emergency Shelter Care Pending Hearing by the Department of Social Services." *Id.* ¶ 26. The form stated that a hearing regarding the emergency shelter care would be held the next available court day. *Id.*

The next day, Waller allegedly notified Mrs. Gaudioso that a hearing would not be held, as the emergency shelter care authorization had been withdrawn after N. was given to Short. *Id.* ¶ 27. Plaintiff's attorney contacted the DSS counsel, who confirmed that no hearing would be held. *Id.* ¶ 29. The DSS attorney allegedly explained that Maryland law requires an emergency shelter care hearing only when the shelter is continued. *Id.* As N. was given to his father, shelter care was not continued and a hearing was not necessary. *Id.* The DSS attorney allegedly further asserted that a hearing in the related custody case was sufficient to satisfy the demands of due process. *Id.* ¶ 30.

Plaintiff alleges that, since the removal of N., Short has denied B.G. any visitation. *Id.* ¶ 31. He allegedly made this decision on the advice of DSS. *Id.* DSS has also ended its provision of intensive family services to B.G. *Id.* ¶ 32. A preliminary *pendente lite* custody hearing was held on October 29, 2015, at which the Circuit Court for Worcester County awarded temporary custody to Short and set forth a tiered visitation schedule for the Plaintiff. Amended Compl. App. G, 27, ECF No. 18-2 (B.G. Aff.). Counsel for the Plaintiff has confirmed that the custody proceedings remain pending in that court at the present time.

Plaintiff has filed the present action in this Court, seeking injunctive and declaratory relief for the alleged deprivation of her right to due process under the Fourteenth Amendment, U.S. Const. amend. XIV. Compl., ECF No. 1. She initially filed a Motion for Preliminary Injunction (ECF No. 5). Specifically, she requests a preliminary injunction forcing DSS to hold a hearing on the subject of N.'s removal. Defendants timely moved to dismiss (ECF No. 12), and shortly thereafter Plaintiff filed her own Motion for Summary Judgment (ECF No. 13). Plaintiff subsequently filed the present Amended Complaint (ECF No. 18), which Defendants again opposed (ECF No. 31).

## STANDARDS OF REVIEW

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)[8]

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the

[8] Defendants also move to dismiss the Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. As Plaintiff has failed to state a claim for which relief may be granted under Rule 12(b)(6), this Court need not reach Defendants' Rule 12(b)(1) arguments.

dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Moreover, a court need not accept any asserted legal conclusions drawn from the proffered facts. *Iqbal*, 556 U.S. at 678. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

**B. Motion for Preliminary Injunction Pursuant to Rule 65**

The decision whether to issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure is committed to the sound discretion of the district court. *Network Sys. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). As the granting of preliminary injunctive relief is an "extraordinary remedy[,]" it will "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008); *accord Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997). To make such a "clear showing," the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 345-46 (4th Cir. 2009) (quoting *Winter*, 555 U.S. at 20), *vacated by* 130 S. Ct. 2371 (2010), *reinstated in part by* 607 F.3d 356 (4th Cir. 2010). The plaintiff must satisfy all four requirements. *The Real Truth About Obama*, 575 F.3d at 345-46; *accord Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) ("*Winter* thus requires that a party seeking a preliminary injunction . . . must clearly show that it is likely to succeed on the merits."); *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013).

**C. Motion for Summary Judgment Pursuant to Rule 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). If both parties have filed motions for summary judgment, then this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted). Regardless, this Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

## ANALYSIS

B.G. claims that due process requires a hearing either before or shortly following the removal of her child, N. Defendants' alleged failure to provide such a hearing thus violated B.G.'s constitutional rights. 42 U.S.C. § 1983, under which Plaintiff asserts her constitutional

claims, creates a private right of action for any United States citizen seeking to remedy alleged constitutional violations. 42 U.S.C. § 1983. Under Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

To "vindicate[]" Defendants' alleged constitutional violations, Plaintiff seeks: (a) injunctive relief in the form of an immediate hearing "conforming to the requirements of the Due Process Clause," Amended Compl. at 7; (b) a declaratory judgment that a child may not be removed from a parent without a pre-removal or post-removal due process hearing, *id.*; and (c) damages against Defendants Nottingham, Waller, and Linton in their individual capacities, *id.* This Court will first address the various arguments raised by Defendants as grounds for dismissal before turning to the remaining motions filed by the Plaintiff.

**A. Defendants' Motion to Dismiss the Amended Complaint**

In moving to dismiss the subject Amended Complaint, Defendants identify both jurisdictional and substantive inadequacies that are fatal to Plaintiff's claim. Specifically, Defendants argue that that Nottingham, Waller, and Linton are entitled to qualified

immunity for their actions, thereby requiring dismissal of B.G.'s claim for damages. With respect to her claims for declaratory and injunctive relief, Defendants contend that this Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971), which requires federal court abstention from ongoing state court proceedings.[9] This Court will first address Plaintiff's claim for damages against the individual Defendants, and then turn to her claims for declaratory and injunctive relief.

**i. Monetary Relief—Individual Defendants**

Qualified immunity affords a government officers protection from suits for monetary damages when the officers have acted in good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This brand of immunity is "an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow*, 457 U.S. at 818 (1982). Generally, motions to dismiss pursuant to Rule 12(b)(6) address the legal sufficiency of a complaint rather than the existence of meritorious affirmative defenses; however, when the existence of such a meritorious defense—such as qualified immunity—is apparent on the face of the complaint, dismissal is appropriate. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Thus, this Court will consider whether the Individual Defendants are entitled to qualified immunity by examining the allegations contained in the Amended

[9] Alternatively, Defendants contend that B.G.'s claims for declaratory and injunctive relief are moot. As *Younger* abstention does indeed apply, this Court need not consider whether the declaratory and injunctive claims are also moot.

Complaint. The doctrine is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law." *Occupy Columbia*, 738 F.3d at 118. Qualified immunity accordingly shields government officials from § 1983 claims unless "(1) the allegations underlying the claim, if true, substantiate a violation of federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Id.*

Defendants Nottingham, Waller, and Linton are entitled to qualified immunity on several grounds. As a preliminary matter, this Court acknowledges that a parent's interest "in retaining the custody of one's child" is a "private, fundamental liberty interest[.]"*Weller v. Dep't of Social Servs. for City of Baltimore*, 901 F.2d 387, 394 (4th Cir. 1990). When the State deprives the parent of custody of the child, due process requires a pre-removal or prompt post-removal hearing. *Id.* at 396. This due process right is clearly established for purposes of qualified immunity, thereby satisfying the second prong of review.

Yet, the first prong is not so easily satisfied. The allegations of the Amended Complaint simply do not establish a constitutional violation. In Maryland, a child welfare worker "may remove the child temporarily, without prior approval by the juvenile court, if the representative believes that the child is in serious, immediate danger." Md. Code Ann., Fam. Law § 5-709(c). That child may then be placed in "emergency shelter care before a hearing if: (1) Placement is required to protect the child from serious danger; [and] (2) There is no parent, guardian, custodian, relative, or other person able to provide supervision . . ." Md. Code Ann., Cts. & Jud. Proc. § 3-815(b)(1)-(2). To continue the shelter care, "the local

[child welfare] department [must] . . . immediately file a petition to authorize continued shelter care" in the appropriate state court. Cts. & Jud. Proc. § 3-815(c)(1). Emergency shelter care thus occurs only where the child is in serious danger *and* no parent or other qualifying individual is available. When a parent *is* available, then the emergency shelter care provisions are not implicated.

In this case, N. was residing with Short, his father, at the time of his removal from B.G.'s care. When Nottingham and Linton took N., they then returned him to Short's care. Any shelter care ceased because of the availability of a parent, thus B.G. was in no way "deprived" of a hearing under the shelter care provisions. *See* Cts. & Jud. Proc. § 3-815(b)(2). Moreover, the removal of N. from B.G.'s care did not interfere with her custody rights. Prior to the removal, Short had filed a petition to obtain custody of N. No court had awarded him custody of N., accordingly he and B.G. retained equal custody rights to their son. The removal of N. from B.G.'s care in no way transferred legal custody to the State or to Short. She thus stood on equal footing with Short to adjudicate custody of N. *See McDermott v. Dougherty*, 869 A.2d 751, 770 (Md. 2005) (quoting Md. Code. Ann., Fam. Law § 5-203(d)(2)) (explaining that, in a custody dispute, "[n]either parent has a superior claim to the exercise of th[e] right to provide 'care, custody, and control' of the children.").

Even further, the primary cases on which Plaintiff relies, *Weller*, 901 F.2d 387, and *B.S. v. Somerset County*, 704 F.3d 250 (3d. Cir. 2013), do not establish that due process requires a hearing after *any* removal of a child from the care of a parent. Rather, both *Weller* and *B.S.*

concerned the transfer of custody, legal or otherwise,[10] from one parent to the other parent. When a parent is deprived of *custody* rights, then due process requires a hearing. *B.S.*, 704 F.3d at 335; *Weller*, 901 F.2d at 396. The removal of N. from B.G.'s care, however, did not deprive B.G. of custody or transfer custody to the father. Due process thus does not require a post-removal hearing.

Even if the alleged failure to provide a prompt post-removal hearing under these circumstances *did* violate due process, Plaintiff does not connect that deprivation to the Individual Defendants. For liability to attach to the Individual Defendants, they must have the power to grant her the requested hearing. In other words, B.G. must allege that the Individual Defendants themselves acted to deny her a hearing. The Amended Complaint, however, is devoid of any such allegations. Indeed, Plaintiff admits in her Opposition that she "does not know who made the decision to deny [her] a hearing." Mem. in Support of Resp. in Opp'n, 15, ECF No. 32-1. She must do more than merely speculate as to the Individual Defendants' involvement.

In sum, the allegations of the Amended Complaint, if true, do not substantiate a constitutional violation. Defendants Nottingham, Waller, and Linton are accordingly entitled to qualified immunity to Plaintiff's claim for damages.

**ii. Declaratory and Injunctive Relief—All Defendants**

With regards to Plaintiff's claims for declaratory and injunctive relief, this Court must abstain from adjudication under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. As the United States Court of Appeals for the Fourth Circuit has explained, *Younger* abstention

---

[10] *B.S.* explicitly involved the transfer of legal custody, whereas the court in *Weller* did not specify whether the custody at issue was legal or some other form of custody.

"requires a federal court to abstain from interfering in state proceedings, even if jurisdiction exists," when there is "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the [party] to raise the federal constitutional claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008). The *Younger* doctrine does not espouse "merely a principle of abstention, rather [it] sets forth a mandatory rule of equitable restraint, requiring the dismissal of a federal action." *Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007) (quoting *Nivens v. Gilchrest*, 444 F.3d 237, 247 (4th Cir. 2006)). *Younger* abstention thus "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979).

In this case, all three elements of *Younger* are satisfied. First, an ongoing state judicial proceeding—the child custody proceeding in the Circuit Court for Worcester County—was instituted prior to B.G.'s filing of the present action. The State's absence from the custody proceeding is immaterial, as the custody hearing specifically concerns the very issue on which this action is premised—the custody of N. After his removal from B.G., N. was released to the care of his father, Short. This action did not deprive B.G. of custody, but merely transferred care of the child from one parent to another. The proper recourse was thus to contest Short's custody petition in the Circuit Court for Worcester County, and not for the State to file a petition under Maryland's Child in Need of Assistance statute, Md.

Code Ann., Cts. & Jud. Proc. § 3-801(g). The custody dispute, adjudicated by the Circuit Court for Worcester County, remains pending at the present time.

Second, this Court acknowledges that a parent's own interest in her child is fundamental. *Meyer v. Nebraska*, 262 U.S. 390, 399-402 (1923). Yet, it is also well established that child welfare matters, including child custody, implicate important state interests. *Moore*, 442 U.S. at 423. The State's vital interest in the welfare of a child thereby counsels in favor of abstention, as the parent's own interests may be adjudicated in the state court proceeding.

Third, to the extent B.G. asserts any plausible constitutional arguments, she has offered no persuasive reasons why the state court could not consider these arguments. As set forth *supra*, she has failed to plead a plausible claim that Defendants denied her due process by the removal of N. from B.G.'s care. Any objections to this removal could be, and were, raised during the custody proceeding. If this Court found a due process violation and then granted the requested relief, any removal hearing would merely rehash arguments already offered during the custody proceeding. Given the inherent intricacies of family law, federal courts "traditionally avoid[]" adjudication. *Weller*, 901 F.2d at 396. Although exceptions to this general rule arise, *id.* at 396-97, this case does not present any such exceptions. Accordingly, this Court must abstain under *Younger* from adjudicating Plaintiff's claims for declaratory and injunctive relief.

**B. Plaintiff's Motion for Preliminary Injunction**

An essential prerequisite for a preliminary injunction is the plaintiff's "clear showing" that she "is likely to succeed on the merits[.] *The Real Truth About Obama*, 575 F.3d at 345 (quoting *Winter*, 555 U.S. at 20). This Court's decision to grant Defendants' Motion to

Dismiss the Amended Complaint necessarily signifies that Plaintiff is *un*likely to succeed on the merits. She must satisfy all four requirements, yet her request for a preliminary injunction stumbles at the first hurdle. Accordingly, Plaintiff's Motion for Preliminary Injunction is DENIED.

**C. Plaintiff's Motion for Summary Judgment**

Similarly, Plaintiff's Motion for Summary Judgment must also be denied. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Even if B.G. had shown that no genuine disputes of fact remain, she is not entitled to judgment as a matter of law because her claims are dismissed. Any conclusion to the contrary would be illogical. Plaintiff's Motion for Summary Judgment is thus DENIED.

CONCLUSION

For the reasons stated above, Plaintiff's Motion for Preliminary Injunction (ECF No. 5) is DENIED; Defendants' Motion to Dismiss the Original Complaint (ECF No. 12) is MOOT;[11] Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED; and Defendants' Motion to Dismiss the Amended Complaint (ECF No. 31) is GRANTED.

A separate Order follows.

Dated: June 20, 2016

___/s/___________________________
Richard D. Bennett
United States District Judge

[11] On November 9, 2015, Plaintiff filed an Amended Complaint (ECF No. 18). Defendants thus acknowledge that their first Motion to Dismiss was rendered moot by that filing. Notice, ECF No. 20.